_____

No. 13-1903
_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**
_____

**JOSEPH WEIGEL,** *et al.*,

*Plaintiffs-Appellants*,

v.

**STATE OF MARYLAND,** *et al.*,

*Defendants-Appellees*.

_____

On Appeal from the United States District Court
for the District of Maryland
(William D. Quarles Jr., District Judge)
_____

**BRIEF OF APPELLEES**
_____

WILLIAM C. SAMMONS                DOUGLAS F. GANSLER
GREGORY M. GARRETT                Attorney General of Maryland
TYDINGS & ROSENBERG LLP
100 East Pratt Street, 26th Floor    JULIA DOYLE BERNHARDT
Baltimore, Maryland  21202          Assistant Attorney General
(410) 752-9767                     200 Saint Paul Place, 20th Floor
                                   Baltimore, Maryland  21202
                                   (410) 576-7291


December 12, 2013                  Attorneys for Appellees

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 13-1903        Caption: Profili, et al. v. State of Maryland, et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Armistead Homes Corporation
(name of party/amicus)


who is _____appellee_____, makes the following disclosure:
        (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?  ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO
      If yes, identify all such owners:

- 1 -

4.   Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?   ☐ YES ☑ NO
     If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)   ☐ YES ☑ NO
     If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?   ☐ YES ☑ NO
     If yes, identify any trustee and the members of any creditors' committee:

Signature: _____   Date: _____8/1/13_____

Counsel for: _Armistead Homes Corporation_____

## CERTIFICATE OF SERVICE
******************************

I certify that on _____8/1/13_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Barry R. Glazer, Esquire
Law Office of Barry R. Glazer, P.C.
1010 Light Street
Baltimore, Maryland 21230

_____   _____8/1/13_____
(signature)                (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __13-1903__      Caption: _Joseph Weigel v. State of Maryland_

Pursuant to FRAP 26.1 and Local Rule 26.1,

_Robert M. Bell, Chief Judge, Court of Appeals of Maryland (retired)_
(name of party/amicus)

_____

who is _____appellee_____, makes the following disclosure:
         (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?   ☐YES ☑NO

2.    Does party/amicus have any parent corporations?                        ☐YES ☑NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                    ☐YES ☑NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct
      financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
      If yes, identify any publicly held member whose stock or equity value could be affected
      substantially by the outcome of the proceeding or whose claims the trade association is
      pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
      If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Julia Doyle Bernhardt                    Date:    8/6/2013

Counsel for: Robert M. Bell

# CERTIFICATE OF SERVICE
**************************

I certify that on _____8/6/2013_____ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

/s/ Julia Doyle Bernhardt                                8/6/2013
        (signature)                                        (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __13-1903__     Caption: _Joseph Weigel v. State of Maryland_____

Pursuant to FRAP 26.1 and Local Rule 26.1,

_Court of Appeals of Maryland_____
(name of party/amicus)

_____

who is _____appellee_____, makes the following disclosure:
        (appellant/appellee/amicus)

1.      Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.      Does party/amicus have any parent corporations?                            ☐ YES ☑ NO
        If yes, identify all parent corporations, including grandparent and great-grandparent
        corporations:

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
        other publicly held entity?                                               ☐ YES ☑ NO
        If yes, identify all such owners:

- 1 -

4.      Is there any other publicly held corporation or other publicly held entity that has a direct
        financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐ YES ☑ NO
        If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO
        If yes, identify any publicly held member whose stock or equity value could be affected
        substantially by the outcome of the proceeding or whose claims the trade association is
        pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑ NO
        If yes, identify any trustee and the members of any creditors' committee:

Signature: _/s/ Julia Doyle Bernhardt_____    Date: _____8/6/2013_____

Counsel for: _Court of Appeals of Maryland_____

# CERTIFICATE OF SERVICE
**************************

I certify that on _____8/6/2013_____ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

_/s/ Julia Doyle Bernhardt_____                    _____8/6/2013_____
         (signature)                                              (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __13-1903__   Caption: __Joseph Weigel v. State of Maryland__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Douglas F. Gansler, Attorney General of Maryland__
(name of party/amicus)

_____

who is _____appellee_____, makes the following disclosure:
        (appellant/appellee/amicus)

1.      Is party/amicus a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO

2.      Does party/amicus have any parent corporations?   ☐ YES ☑ NO
        If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO
        If yes, identify all such owners:

- 1 -

4.    Is there any other publicly held corporation or other publicly held entity that has a direct
      financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐ YES ☑ NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO
      If yes, identify any publicly held member whose stock or equity value could be affected
      substantially by the outcome of the proceeding or whose claims the trade association is
      pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑ NO
      If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Julia Doyle Bernhardt          Date:        8/6/2013

Counsel for: Douglas F. Gansler

## CERTIFICATE OF SERVICE
****************************

I certify that on _____8/6/2013_____ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

/s/ Julia Doyle Bernhardt                                8/6/2013
        (signature)                                        (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __13-1903__    Caption: _Joseph Weigel v. State of Maryland_

Pursuant to FRAP 26.1 and Local Rule 26.1,

_Martin J. O'Malley, Governor of Maryland_
(name of party/amicus)

_____

who is _____appellee_____, makes the following disclosure:
      (appellant/appellee/amicus)

1.     Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.     Does party/amicus have any parent corporations?  ☐ YES ☑ NO
       If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.     Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO
       If yes, identify all such owners:

- 1 -

4.   Is there any other publicly held corporation or other publicly held entity that has a direct
     financial interest in the outcome of the litigation (Local Rule 26.1(b))?      ☐ YES ☑ NO
     If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)   ☐ YES ☑ NO
     If yes, identify any publicly held member whose stock or equity value could be affected
     substantially by the outcome of the proceeding or whose claims the trade association is
     pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?                          ☐ YES ☑ NO
     If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Julia Doyle Bernhardt                    Date:       8/6/2013

Counsel for: Martin J. O'Malley

# CERTIFICATE OF SERVICE
**************************

I certify that on        8/6/2013        the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

 /s/ Julia Doyle Bernhardt                                   8/6/2013
        (signature)                                            (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __13-1903__     Caption: Joseph Weigel v. State of Maryland _____

Pursuant to FRAP 26.1 and Local Rule 26.1,

 State of Maryland _____
(name of party/amicus)

_____

who is _____appellee_____, makes the following disclosure:
        (appellant/appellee/amicus)

1.      Is party/amicus a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO

2.      Does party/amicus have any parent corporations?                              ☐ YES ☑ NO
        If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                               ☐ YES ☑ NO
        If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑ NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Julia Doyle Bernhardt _____    Date: _____8/6/2013_____

Counsel for: State of Maryland _____

## CERTIFICATE OF SERVICE
***************************

I certify that on _____8/6/2013_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ Julia Doyle Bernhardt _____                    _____8/6/2013_____
(signature)                                                          (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __13-1903__      Caption: __Joseph Weigel v. State of Maryland__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Mary Ellen Barbera, Chief Judge, Court of Appeals of Maryland__
(name of party/amicus)

_____

who is _____appellee_____, makes the following disclosure:
         (appellant/appellee/amicus)

1.      Is party/amicus a publicly held corporation or other publicly held entity?      YES      NO

2.      Does party/amicus have any parent corporations?                                 YES      NO
        If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                                     YES      NO
        If yes, identify all such owners:

- 1 -

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?      YES      NO
        If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)      YES      NO
        If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?      YES      NO
        If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Julia Doyle Bernhardt _____      Date: _____ 8/6/2013 _____

Counsel for: Robert M. Bell _____

## CERTIFICATE OF SERVICE
**************************

I certify that on _____ 8/12/2013 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

 /s/ Julia Doyle Bernhardt _____                         _____ 8/12/2013 _____
        (signature)                                                (date)

# TABLE OF CONTENTS

**Page**

JURISDICTIONAL STATEMENT ........................................................1

ISSUES PRESENTED FOR REVIEW ..................................................3

STATEMENT OF THE CASE.................................................................3

    Introduction...................................................................................3

    Procedural History .......................................................................3

    The Decision of the Court of Appeals in *Tracey v. Solesky*............4

    Armistead's Response to the *Tracey* Decision................................6

    The Plaintiffs' Claims..................................................................8

    The District Court's Decision Dismissing the Action..................10

SUMMARY OF ARGUMENT ............................................................11

ARGUMENT .....................................................................................14

I.    THIS COURT REVIEWS THE DISTRICT COURT'S ORDER DISMISSING THE
    ACTION UNDER A *DE NOVO* STANDARD OF REVIEW. ......................14

II.   THE STATE DEFENDANTS ARE IMMUNE FROM SUIT AND FROM THE
    PLAINTIFFS' CLAIMS FOR RELIEF..................................................15

    A.    The Plaintiffs' Claims in Counts 1, 2, 3, 4, 7, and 8 of the
        Amended Complaint Against the State Defendants Are
        Barred by the Eleventh Amendment to the United States
        Constitution. .......................................................................15

    B.    The Court of Appeals and Its Chief Judge Have Absolute
        Immunity from Plaintiffs' Claims for Injunctive Relief. ...................20

    C.    The Plaintiffs Waived Their Claims That the State
        Defendants Are Not Immune from Suit.............................................21

III.  THE DISMISSAL OF ARMISTEAD SHOULD BE AFFIRMED BECAUSE ARMISTEAD IS NOT A STATE ACTOR AND THE PLAINTIFFS WAIVED ANY CLAIM THAT IT IS. ...........................................22

   A.   Armistead Is Not a State Actor. .........................................23

   B.   The Plaintiffs Have Waived Any Claim That Armistead Is a State Actor. ...................................................27

IV.  THE COMPLAINT FAILS TO ALLEGE ANY CLAIM AGAINST THE DEFENDANT STATE OFFICIALS. ........................................28

V.   THE PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED BECAUSE THE ALLEGATIONS FAIL TO SUPPORT PLAINTIFFS' CONTENTIONS THAT THEIR DUE PROCESS RIGHTS WERE VIOLATED OR THAT THERE HAS BEEN A TAKING OF THEIR PROPERTY. .........................................30

   A.   The Allegations Fail to Support Plaintiffs' Contentions That Their Due Process Rights Were Violated. .................................30

      1.   A Dog Owner's Property Interest Is Subject to the Police Power and May Be Regulated in Order to Provide for the Public Welfare and Safety. .............................30

      2.   Laws Regulating Pit Bull Ownership Do Not Violate Due Process. ................................................31

   B.   The District Court Correctly Determined That There Has Been No Taking of Private Property for Public Use Without Just Compensation. ............................................36

CONCLUSION ........................................................ 44

PERTINENT PROVISIONS ..................................................46

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) ....................................45

## TABLE OF AUTHORITIES

**Page**

### Cases

*Adams v. Bain*, 697 F.2d 1213 (4th Cir. 1982) .................................................. 14, 15

*Alberto San, Inc. v. Consejo de Titulares del Condo. San Alberto*,
    522 F.3d 1 (1st Cir. 2008)........................................................................................25

*American Canine Found. v. City of Aurora*, No. 06-CV-1510,
    2008 U.S. Dist. LEXIS 42545 (D. Colo. May 28, 2008) ...................................42

*American Dog Owners Ass'n v. Yakima*, 777 P.2d 1046 (Wash. 1989)..................34

*American Dog Owners Ass'n, Inc. v. Dade County, Fla.*,
    728 F. Supp. 1533 (S.D. Fla. 1989) ............................................................. 33, 36

*Andrus v. Allard*, 444 U.S. 51 (1979) ............................................................. 37, 41

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................. 14, 15, 25, 28

*Ashton v. Brown*, 339 Md. 70 (1995)......................................................................43

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)............................................ 14, 25

*Bess v. Bracken County Fiscal Court*,
    210 S.W.3d 177 (Ky. App. 2006)................................................... 30, 36, 41, 42

*Bibb v. Navaho Freight Lines*, 359 U.S. 520 (1959) ..............................................11

*Board of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356 (2001)..............................16

*Brandon E. ex rel. Listenbee v. Reynolds*,
    201 F.3d 194 (3d Cir. 2000) ...............................................................................20

*Briscoe v. Lahue*, 460 U.S. 325 (1983)...................................................................20

*Children's Healthcare Is a Legal Duty, Inc. v. Deters*,
    92 F.3d 1412 (6th Cir. 1996) ..............................................................................19

*Cipollone v. Liggett Group, Inc.*, 505 U.S. 504 (1992) ..........................................28

*City of New Orleans v. Dukes*, 427 U.S. 297 (1976) ...............................................31

*City of Toledo v. Tellings*, 871 N.E.2d 1152 (Ohio 2007) ................................. 34, 35

*College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*,
    527 U.S. 666 (1999) ...............................................................................16

*Colorado Dog Fanciers, Inc. v. Denver*, 820 P.2d 644 (Colo. 1991) ....................33

*Commonwealth v. R.J. Corman R.R./Memphis Line*,
    116 S.W.3d 488 (Ky. 2003) ....................................................................40

*Consolidated Edison Co. v. Federal Energy Regulatory Comm'n*,
    510 F.3d 333 (D.C. Cir. 2007) ................................................................22

*Dias v. City & County of Denver*, 567 F.3d 1169 (10th Cir. 2009) ......................42

*Doe v. Johnson*, 52 F.3d 1448 (7th Cir. 1995) .......................................................21

*Edwards v. City of Goldsboro*, 178 F.3d 231 (4th Cir. 1999) ......................... 21, 28

*Ex parte Young*, 209 U.S. 123 (1908) ............................................................. 18, 20

*Galloway v. State*, 365 Md. 599 (2001) ................................................................32

*Garcia v. Village of Tijeras*, 767 P.2d 355 (N.M. Ct. App. 1988) ............. 34, 37, 41

*Giarratano v. Johnson*, 521 F.3d 298 (4th Cir. 2008) ...........................................15

*Goldberg v. 400 E. Ohio Condo. Assoc.*, 12 F. Supp. 2d 820 (N.D. Ill. 1998) .......24

*Golder v. United States*, 15 Cl. Ct. 513 (1988) ......................................................39

*Goodson v. Maggi*, 797 F. Supp. 2d 604 (W.D. Pa. 2011) .....................................20

*Guardian Plans, Inc. v. Teague*, 870 F.2d 123 (4th Cir. 1989) ..............................31

*Hamlin v. Writers Guild of Am.*, 2011 U.S. Dist. LEXIS 151968, 2011 WL
    7069428 (W.D. Pa. 2011) .......................................................................40

*Hearn v. City of Overland Park*, 772 P.2d 758 (Kan. 1989) ..................................34

*Henry v. Jefferson County Comm'n*, 637 F.3d 269 (4th Cir. 2011) ......................37

*Hill v. Colorado*, 530 U.S. 703 (2000) ..................................................................32

*Holliday Amusement Co. of Charleston, Inc. v. South Carolina*,
  493 F.3d 404 (4th Cir. 2007) ...................................................................... 40, 41

*Holly v. Scott*, 434 F.3d 287 (4th Cir. 2006) .......................................................... 23

*Holt v. City of Maumelle*, 817 S.W.2d 208 (Ark. 1991) ........................................ 33

*Hope Clinic v. Ryan*, 195 F.3d 857 (7th Cir. 1999) ............................................... 19

*In re Creative Goldsmiths of Washington, D.C., Inc., Debtor*,
  119 F.3d 1140 (4th Cir. 1997) ...................................................................... 18

*Ireland v. State*, 310 Md. 328 (1987) ................................................................ 21, 29

*Kerns v. United States*, 585 F.3d 187 (4th Cir. 2009) ....................................... 14, 15

*Langley v. Monumental Corp.*, 496 F. Supp. 1144 (D. Md. 1980) ........................ 24

*Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528 (2005) ........................................ 37, 39

*Long v. Van de Kamp*, 961 F.2d 151 (9th Cir. 1992) .............................................. 19

*Loren v. Sasser*, 309 F.3d 1296 (11th Cir. 2002) ................................................... 24

*Lowery v. Prince George's County, Md.*,
  960 F. Supp. 952 (D. Md. 1997) ..................................................................... 17

*Lucas v. South Carolina Coastal Council*, 505 U.S. 1003 (1992) ......................... 41

*MacLeod v. Takoma Park*, 257 Md. 477 (1970) .................................................... 40

*Maryland Comm. for Fair Representation v. Tawes*,
  228 Md. 412 (1962) ....................................................................................... 43

*Matthews v. Amberwood Assocs. Ltd. P'shp*, 351 Md. 544 (1998) .......................... 5

*McFayden v. Duke Univ.*, 786 F. Supp. 2d 887 (M.D.N.C. 2011) .......................... 27

*Mentavlos v. Anderson*, 249 F.3d 301 (4th Cir. 2001) .......................................... 24

*Morales v. Richardson*, 841 F. Supp. 2d 908 (D. Md. 2012) ................................. 27

*Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Corp.*,
  65 F.3d 1113 (4th Cir. 1995) ......................................................................... 39

*Niccia v. New York*, 254 U.S. 228 (1920) .......................................................... 30, 41

*Nunez-Pena v. Immigration & Naturalization Serv.*,
    956 F.2d 223 (10th Cir. 1992) ......................................................21

*Palazzolo v. Rhode Island*, 533 U.S. 606 (2001) ......................................................39

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984)................... 16, 17

*Pennsylvania Cent. Transp. Co. v. New York City*,
    438 U.S. 104 (1978)......................................................37

*Pierson v. Ray*, 386 U.S. 547 (1967) ......................................................20

*Puerto Rico Aqueduct & Sewer Auth'y v. Metcalf & Eddy, Inc.*,
    506 U.S. 139 (1993)......................................................17

*Quern v. Jordan*, 440 U.S. 332 (1979) ......................................................17

*Ridings v. State Roads Comm'n*, 249 Md. 395 (1968) ............................................43

*Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996)............................... 16, 18

*Sentell New Orleans & Carrollton C.R. Co.*, 166 U.S. 698 (1897)........... 30, 31, 41

*Shadoan v. Barnett*, 289 S.W. 204 (Ky. 1926) ......................................................30

*Sherman v. Community Consol. Sch. Dist. 21*,
    980 F.2d 437 (7th Cir. 1992) ......................................................19

*Sifuentes v. American Cyanamid Co.*, 787 F. Supp. 2d 843 (E.D. Wisc. 2011)......38

*State v. Anderson*, 566 N.E.2d 1224 (Ohio 1991) ............................................ 35, 36

*State v. Peters*, 534 So. 2d 760 (Fla. App. 1988)......................................................33

*Stop the Beach Renourishment, Inc. v. Florida Dep't of Envtl. Prot.*,
    560 U.S. 702, 130 S. Ct. 2592 (2012)...................................................... 37, 38, 40

*Stump v. Sparkman*, 435 U.S. 349 (1978)......................................................20

*Tracey v. Solesky*, 427 Md. 627 (2012), *modified*,
    427 Md. 664 (2012) ............................... 3, 5, 7, 13, 21, 25, 26, 27, 36, 38, 42, 43

*Tyler v. City of College Park*, 415 Md. 475 (2010)......................................................32

*United States ex rel. Vuyyuru v. Jadhav*,
  555 F.3d 337 (4th Cir. 2009) ...............................................................15

*United States v. Morrison*, 529 U.S. 598 (2000) ......................................23

*Vanater v. Village of South Point*, 717 F. Supp. 1236 (S.D. Ohio 1989)......... 31, 32

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
  455 U.S. 489 (1982)...............................................................................32

*Wag More Dogs, LLC v. Cozart*, 680 F.3d 359 (4th Cir. 2012) ...................... 14, 15

*Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316 (4th Cir. 2001) .................19

*Weller v. Department of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990) .......................17

*Westchester West No. 2 Ltd. P'ship v. Montgomery County*,
  276 Md. 448 (1975) ...............................................................................32

*Wiggins v. 11 Kew Garden Ct.*,
  497 Fed. App'x 262 (4th Cir. 2012) ....................................................27

*Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989) ...................................16

*Young v. Halle Hous. Assocs.*,
  152 F. Supp. 2d 355 (S.D.N.Y. 2001) .............................................24

## Constitutional Provisions

Md. Const. art. III, § 40...................................................................... 9, 43, 47

Md. Const. art. IV, § 14 ..................................................................... 17, 47

Md. Decl. Rts. art. 24 .......................................................................... 9, 48

U.S. Const. amend. V ...............................................................................9

U.S. Const. amend. XI ............................................................... 16, 17, 18

U.S. Const. amend. XIV .........................................................................8

## Statutes

28 U.S.C. § 1331 ...............................................................................2

28 U.S.C. § 1367 ...............................................................................2

42 U.S.C. § 1983 ...........................................................................8, 9

42 U.S.C. § 1983 ...........................................................................20

Md. Code Ann., State Gov't § 12-103(2) ....................................... 17, 49

Md. Code Ann., State Gov't § 12-104(a)(1) .................................... 16, 49

## Rules

Fed. R. App. P. 28 .................................................................. 23, 28, 46

Fed. R. App. P. 28(a)(8)(A) ........................................................ 21, 28

Fed. R. Civ. P. 12(b)(1) ...............................................................10

Fed. R. Civ. P. 12(b)(6) .......................................................... 10, 15

## Miscellaneous

85 Md. Op. Att'y Gen. 265 (2000) .....................................................6, 7

_____

No. 13-1903
_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**
_____

**JOSEPH WEIGEL,** *et al.*,

*Plaintiffs-Appellants*,

v.

**STATE OF MARYLAND,** *et al.*,

*Defendants-Appellees*.

_____

On Appeal from the United States District Court
for the District of Maryland
(William D. Quarles Jr., District Judge)
_____

**BRIEF OF APPELLEES**
_____

**JURISDICTIONAL STATEMENT**

In this civil action, plaintiffs Joseph Weigel, Joanna Profili, and Jenine

Gangi filed a class-action complaint for declaratory and injunctive relief against

the State of Maryland, the Court of Appeals of Maryland, Governor

Martin J. O'Malley, Attorney General Douglas F. Gansler, Chief Judge Robert M.

Bell,[1] (collectively, the "State Defendants"), and Armistead Homes Corporation ("Armistead"). The district court had subject matter jurisdiction under 28 U.S.C. § 1331. On June 19, 2013, the district court granted the State Defendants' motion to dismiss (J.A. 117) and on June 21, 2013, the court clarified that the order of dismissal had dismissed all claims against all defendants for failure to state a claim upon which relief could be granted (J.A. 120). The plaintiffs noted this appeal on July 15, 2013. (J.A. 122.) This Court has jurisdiction under 28 U.S.C. § 1291 to review the district court's judgment.

## ISSUE PRESENTED FOR REVIEW

Did the district court properly grant the defendants' motions to dismiss because, as the district court correctly determined, the State defendants are immune from suit and the plaintiffs failed to state a claim upon which relief can be granted against any of the defendants?

---

[1] Judge Bell was Chief Judge of the Court of Appeals until his retirement, effective July 6, 2013. On August 12, 2013, his successor in office, Mary Ellen Barbera, was substituted as a party to this proceeding.

## STATEMENT OF THE CASE

### Introduction

In this suit for declaratory and injunctive relief against the State Defendants and Armistead, the plaintiffs requested that the district court declare "unconstitutional, void, and unenforceable" the decision of the Court of Appeals of Maryland in *Tracey v. Solesky*, 427 Md. 627 (2012), *modified*, 427 Md. 664 (2012). The Tracey decision changed prospectively the common law of Maryland with respect to liability for injuries caused by pit bull dogs. (J.A. 38.)[2] The district court dismissed the amended complaint because the State Defendants are immune from suit and the complaint failed to state a claim upon which relief can be granted as to any defendant. (J.A. 117, 120.)

### Procedural History

On September 12, 2012, plaintiff Joseph Weigel filed a verified complaint for declaratory and injunctive relief (ECF 1), motion for temporary restraining order (ECF 3), and motion for preliminary injunction (ECF 2) against the State of Maryland and Armistead. The amended class action complaint, filed on October 15, 2012, added plaintiffs Profili and Gangi and defendants Governor Martin J. O'Malley, Attorney General Douglas F. Gansler, Chief Judge Robert M. Bell, and

---

[2] The original opinion had applied to both "purebred" and "cross-breed" pit bulls. In the subsequent modification, the Court of Appeals narrowed its holding to apply only to "purebred" pit bulls. *See Tracey*, 427 Md. at 668.

the Court of Appeals of Maryland.  (J.A. 8–9; ECF 20-2.)  The plaintiffs requested (1) a temporary restraining order;[3] (2) that the district court declare that Armistead cannot use the decision of the Court of Appeals, which prospectively changed common law liability for injuries caused by pit bulls, as a basis for prohibiting tenants of Armistead from keeping pit bull dogs on the premises or evicting tenants who defy this prohibition (J.A. 38); and (3) that the district court preliminarily and permanently enjoin (a) "interference" with leasehold agreements based on the *Tracey* decision (*id.*); (b) "enforcement" of the *Tracey* decision (*id.*); and (c) eviction of tenants by Armistead based on the *Tracey* decision (*id.*).

The defendants moved to dismiss; on June 19, 2013, the district court granted the State Defendants' motion to dismiss (J.A. 117), and on June 21, 2013, the district court clarified that it had dismissed all claims against all defendants for failure to state a claim upon which could be granted.  (J.A. 120.)  The plaintiffs filed a timely notice of appeal on October 15, 2013.  (J.A. 122.)

### The Decision of the Court of Appeals in *Tracey v. Solesky*

The record evidence in *Tracey* established that a pit bull viciously attacked two boys on the same day, and that the second child victim, Dominic Solesky,

---

[3] In response to the request for temporary restraining order, Armistead gave assurances to the district court that Armistead would provide at least 20 days' notice and an opportunity to cure before initiating any type of proceeding against Mr. Weigel on account of his dog ownership. Letter from William C. Sammons (Sept. 21, 2012) (ECF 10.)

sustained life-threatening injuries. 427 Md. at 633. In its opinion changing the common law of Maryland, the Court of Appeals reviewed the many Maryland cases involving vicious attacks by pit bulls, *id.* at 629–32, 642–44; out-of-state cases containing findings regarding the vicious propensities of pit bulls, *id.* at 647–52; a special report of the American Veterinary Association describing fatal attacks by pit bulls, *id.* at 644–45; and other publications documenting the disproportionate share of fatal and life-threatening attacks on humans by pit bulls as compared to other breeds, *id.* at 646–47. Based on the record evidence and these other materials, the Court of Appeals determined that pit bull dogs are inherently dangerous, because they are "extremely aggressive," "bite to kill without signal," and have a "greater propensity to bite humans than other breeds." *Id.* at 642–42 (quoting *Matthews v. Amberwood Assocs. Ltd. P'shp*, 351 Md. 544, 562–63 (1998) (internal quotations omitted)).

Concluding that pit bulls were inherently dangerous, the Court of Appeals changed the common law of Maryland to impose strict liability on a premises owner or landlord for damages caused to an injured plaintiff who establishes that (1) the owner or landlord knowingly permitted the presence of a pit bull on the premises and (2) the dog attacked the plaintiff on or from the premises. 427 Md. at 652–63. In its opinion on reconsideration, the Court of Appeals explained that, "[b]y imposing long-standing principles of common law strict liability for what is

now clearly foreseeable damage done by those dogs, [the court's decision] simply requires that those who possess them or permit them to be on their property take reasonable steps to assure that they do not run loose or otherwise are in a position to injure other people." *Id.* at 665.

### Armistead's Response to the *Tracey* Decision

Armistead is a non-profit, non-stock, cooperative housing corporation that owns residential properties, where the plaintiffs, three members and leaseholders of Armistead, reside. (J.A. 66.) Each plaintiff believes that his or her dog is a pit bull (J.A. 59 ¶ 7, 61 ¶ 7, 63 ¶ 7.)

Each member of Armistead has a 99-year lease and, as the district court found, has a property interest in membership and the related leasehold interest. (J.A. 67 (citing 85 Md. Op. Att'y Gen. 265, 267 (2000).) The plaintiffs' dogs are personal property under Article 24, § 11-506 of the Annotated Code of Maryland. (J.A. 70.)

Under the plaintiffs' leases, Armistead "reserves the right to impose any reasonable rules and regulations and to change the same from time to time, as in its judgment may be necessary or desirable for the continued protection of the Housing Development as a good living environment, for the safety, care and cleanliness of Dwellings and surrounding premises, and for the preservation of good order and comfort there." (J.A. 68 (citing ECF 16-3 at 2 ¶ 5(c).) Member

leaseholders must comply with Armistead's rules and regulations; a member who defaults—by violating either the rules applicable to membership or the conditions of the lease—is subject to having his or her membership terminated after (1) 30 days' notice, (2) opportunity to cure, and (3) failure to cure the default. (J.A. 67-68 (citing ECF 16-2 at 3(Part IV(5), V).)  If a member fails to cure a default, Armistead may file suit for breach of the membership agreement and eviction from the leasehold premises.  (J.A. 69) (citing Md. Code Ann., Real Prop. § 8-402.1; 85 Md. Op. Att'y Gen. 267–70).)

At the time of the *Tracey* decision, Armistead's rules and regulations prohibited tenants from keeping more than two animals in a residence and made no reference to any specific breed.  (J.A. 18 ¶ 41.)  In response to the decision, Armistead modified this policy.  (J.A. 19 ¶ 46.)  At its June 7, 2012 meeting, Armistead's Board of Directors decided that it was in the best interests of Armistead and its residents to ban pit bulls from Armistead's property and voted unanimously to ban pit bulls and cross-bred pit bulls from the premises.  (*Id.*) Under the modified policy, any leaseholder who causes or permits a pit bull or cross-bred pit bull to be on the premises is in material breach of the leasehold conditions.  (J.A. 75–76 (citing ECF 16-1 ¶ 4).)  On August 21, 2012, the Board informed the residents that, effective immediately, they were not permitted to keep pit bulls and cross-bred pit bulls on Armistead property.  (*Id.*)

In the district court, plaintiffs alleged that "termination proceedings have begun" and that they are "having [their] property taken in reliance" on the *Tracey* decision. (J.A. 11 ¶ 4.) The plaintiffs all alleged that they are of limited means and cannot afford to move elsewhere. (J.A. 77 (citing ECF 20 ¶¶ 1, 37).) Consequently, should they choose to keep their pit bull dogs, they claim they will become homeless. (*Id.*)

**The Plaintiffs' Claims**

In Counts 1 and 2, the plaintiffs asserted due process claims against the State Defendants, based on the contention that the *Tracey* decision is unconstitutionally vague; the plaintiffs alleged that, in failing to define "pit bull," the decision does not "provide adequate notice to the public of the conduct that will give rise to strict liability." (J.A. 22 ¶ 63, 23 ¶ 66.) In Count 1, the plaintiffs asserted a violation of the Fourteenth Amendment against all of the State Defendants (J.A. 22) and in Count 2, the plaintiffs asserted a violation of 42 U.S.C. § 1983 against the defendant State officials, in their official capacities. (J.A. 23.)

In Counts 3 and 4, the plaintiffs asserted that they have a "fundamental right" to "own and keep their dogs" (J.A. ¶ 88) and that the *Tracey* decision is "arbitrary and irrational" in imposing strict liability on owners and landlords for injuries caused by pit bulls (J.A. ¶ 89). In Count 3, the plaintiffs asserted a violation of the Fourteenth Amendment against all of the State Defendants

(J.A. 26), and in Court 4, plaintiffs asserted a violation of 42 U.S.C. § 1983 against the defendant State officials, in their official capacities. (J.A. 26–28.)

In Counts 5 and 6, the plaintiffs asserted that the *Tracey* decision takes the property of residents at Armistead Gardens and either (1) gives it to Armistead Homes or (2) "forc[es] residents to surrender their property interests in their dogs, the majority of which, if not all, would be euthanized . . . in direct contravention of the express language of [*Tracey*], which states that 'it does not require that persons who own such dogs get rid of them.'" (J.A. 30 ¶ 118.) In Count 5, the plaintiffs alleged against all defendants violation of the Fifth Amendment Takings Clause, and, in Count 6, plaintiffs asserted a violation of 42 U.S.C. § 1983 against the defendant State officials, in their official capacities. (J.A. 32 ¶ 139.)

In Counts 7, 8, and 9, the plaintiffs asserted state law claims. Counts 7 and 8 alleged due process claims against the State Defendants under Article 24 of the Maryland Declaration of Rights, based on the contention that the *Tracey* decision is unconstitutionally vague (Count 7) (J.A. 32) and arbitrarily and irrationally enforced (Count 8) (J.A. 34). In Count 9, the plaintiffs asserted against all defendants a claim under Article III, § 40 of the Maryland Constitution, which prohibits the State's taking of private property unless for public use and with just compensation. (J.A. 36–37.)

### The District Court's Decision Dismissing the Action

All of the defendants moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (J.A. 5; ECF 25, 28.)  The State Defendants also moved to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction.  (J.A. 5; ECF 25.)

In granting the State Defendants' motion to dismiss the plaintiffs' federal due process claims, the district court determined that the State Defendants have Eleventh Amendment immunity (J.A. 93–97) and that the Chief Judge of the Court of Appeals has absolute judicial immunity from suit (J.A. 98–99).  In addition, the district court determined that the amended complaint failed to state a claim upon which relief could be granted for any of the plaintiffs' due process claims. (J.A. 100–08.)  The *Tracey* decision is not unconstitutionally vague, the district court held, both because "*Tracey* does not 'exact' obedience to any rule" (J.A. 102) and because the term "pit bull" is not unconstitutionally vague (J.A. 102–03).  The plaintiffs did not state a plausible substantive due process claim, the district court explained, because the plaintiffs cited no authority, and there is none, holding that there is a fundamental right to own and keep dogs.  (J.A. 104–05.) The imposition of strict liability on pit bull owners satisfies the applicable rational basis standard of review because strict liability encourages owners and landlords to take extra precautions and, in its decision changing the common law of Maryland, the Court

of Appeals determined that those precautions are necessary based on evidence that the breed is unusually dangerous. (J.A. 107.)

The district court dismissed the plaintiffs' federal-judicial-takings claims because the plaintiffs failed to allege facts sufficient to show that there had been any taking. (J.A. 110, 113.) As the district court observed, according to the allegations in the amended complaint, "there has been no actual, government interference with the plaintiffs' property." (J.A. 113.) Moreover, the district court explained, even if there had been such interference with the plaintiffs' ownership of their dogs, "such interference is within Maryland's police power, exercises of which are presumptively valid." (*Id.* (citing *Bibb v. Navaho Freight Lines*, 359 U.S. 520, 529 (1959).)

Applying the same reasoning, the district court dismissed the plaintiffs' state due process and judicial-takings claims. (J.A. 114–16.)

## SUMMARY OF ARGUMENT

The State of Maryland has not waived its Eleventh Amendment immunity or the immunity of its agencies, officials, and employees. The district court correctly determined that the State Defendants are immune from suit and that no exception to the Eleventh Amendment bar applies to the Governor, the Attorney General, or the Chief Judge of the Court of Appeals because, under Maryland law, none of these officials is responsible for the implementation and enforcement of the laws

that pertain to the relief sought by plaintiffs.  The district court also properly determined that the Chief Judge of the Court of Appeals of Maryland is absolutely immune from suit for judicial acts.

The district court correctly dismissed the Governor, the Attorney General, and the Chief Judge as defendants for the additional reason that the plaintiffs failed to allege any facts that pertain to any of these defendants and, therefore, failed to state a claim against any of them.

The district court properly dismissed all of the claims against Armistead, because it, as a private entity, is incapable of violating any of the constitutional provisions at issue.  The plaintiffs do not even argue that Armistead is a state actor nor do they cite any authority in support of such a claim.  The Court should find that the plaintiffs have forfeited any claim that Armistead is a state actor, and affirm the lower court's dismissal of Armistead.

The district court correctly determined that the plaintiffs failed to state a claim under the due process clause.  The court rightly rejected the plaintiffs' assertion that they have a fundamental right to own and keep dogs, because there is no such right.  Instead, precedent establishes that the States may regulate dog ownership under the police power.  A dog owner's property interest is balanced against the government's power to provide for public safety.  Because dogs are

subject to the police power of the State, they may be regulated in any manner deemed necessary for the protection of the public.

A state's exercise of the police power must be upheld if it is rationally related to a legitimate state interest. In order to establish a due process violation based on a state's arbitrary exercise of its police power, a plaintiff must show that the state law is wholly arbitrary and without any reasonable basis. Because of the documented viciousness of pit bulls, courts have upheld state and local legislation regulating pit bull ownership—or banning pit bull ownership entirely—against claims similar to those asserted here. The decision of the Court of Appeals was not arbitrary or unreasonable; rather, it was based on evidence that pit bulls are inherently extremely dangerous, and the reasonable conclusion that imposition of strict liability encourages owners and landlords to take measures to protect members of the public from injury.

The plaintiffs did not allege facts in their amended complaint that, if proven, would establish that the State or any State official has taken any of their real or personal property, and the plaintiffs did not allege any facts that could establish that the State or any State official has "recharacterize[d] as public property what was previously private property." Nor could they. The opinion in *Tracey* does nothing but modify Maryland's common law of torts. The Court of Appeals did not take away either the plaintiffs' homes or the plaintiffs' dogs. Nor have any of

the defendant State officials or Armistead (a non-state actor) taken anything from the plaintiffs—all of whom reside today in Armistead Gardens with their animals. This Court should affirm the district court's conclusion that no taking occurred under the facts alleged in the amended complaint.

## ARGUMENT

### I.    THIS COURT REVIEWS THE DISTRICT COURT'S ORDER DISMISSING THE ACTION UNDER A *DE NOVO* STANDARD OF REVIEW.

This Court reviews a district court's grant of a motion to dismiss for failure to state a claim and lack of subject matter jurisdiction under a *de novo* standard of review.  *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 364–365 (4th Cir. 2012) (failure to state a claim upon which relief can be granted); *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (subject matter jurisdiction) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)).

To survive a motion to dismiss for failure to state a claim on which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although the reviewing court is required to "'take the facts in the light most favorable to the plaintiff,'" the court "need not accept legal conclusions couched as facts or 'unwarranted inferences, unreasonable conclusions, or arguments.'"  *Wag*

*More Dogs*, 680 F.3d at 365 (quoting *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (internal citation omitted)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

The plaintiff must allege facts sufficient to prove subject matter jurisdiction. *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347–348 (4th Cir. 2009) (citing *Adams*, 697 F.2d at 1219). "When a defendant makes a facial challenge to subject matter jurisdiction, 'the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration.'" *Kerns*, 585 F.3d at 192. That is, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Id.*

## II.    THE STATE DEFENDANTS ARE IMMUNE FROM SUIT AND FROM THE PLAINTIFFS' CLAIMS FOR RELIEF.

### A.    The Plaintiffs' Claims in Counts 1, 2, 3, 4, 7, and 8 of the Amended Complaint Against the State Defendants Are Barred by the Eleventh Amendment to the United States Constitution.

The district court correctly dismissed the claims against the State and its constituent entities in Counts 1, 2, 3, 4, 7, and 8, because the State is not susceptible to suit in federal court without a valid waiver or abrogation of its

sovereign immunity.  (J.A. 94–99.)  *See* U.S. Const. amend. XI; *Board of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001).

The Eleventh Amendment applies to the State and its agencies, *Pennhurst State Sch. & Hosp. v. Haldeman*, 465 U.S. 89, 100 (1984), and a suit against a state official "is no different from a suit against the State itself."  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).  The Eleventh Amendment bars a private litigant's suit against a state, its agencies, and officials, regardless of the type of relief sought, *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 58 (1996), unless either (1) the State has expressly waived its immunity by "clear declaration," *College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 676 (1999) (citations omitted), or (2) Congress has "unequivocally expressed its intent to abrogate the immunity" in a statute "passed pursuant to a constitutional provision granting Congress the power to abrogate," *Seminole Tribe*, 517 U.S. at 55, 59.  The State of Maryland has not waived its Eleventh Amendment immunity or the immunity of its agencies, officials, and employees.[4]  Md. Code Ann., State

---

[4] Although the State has created a limited waiver of its sovereign immunity under the Maryland Tort Claims Act ("MTCA"), that waiver is expressly limited to suits brought in state court.  *See* Md. Code Ann., State Gov't § 12-104(a)(1) ("[T]he immunity of the State and of its units is waived as to a tort action, in a court of the State, to the extent provided under paragraph (2) of this subsection.").  Moreover, the MTCA expressly states that the State has not "waive[d] any right or defense of the State or its units, officials, or employees in an action in a court of the United States or any other state, including any defense that is available under the 11th Amendment to the United States Constitution."  Md. Code Ann., State

Gov't § 12-103(2); *In re Creative Goldsmiths of Washington, D.C., Inc.*, 119 F.3d at 1148–49; *Lowery v. Prince George's County, Md.*, 960 F. Supp. 952, 954 n.4 (D. Md. 1997). Nor does the complaint here assert the existence of any statute in which Congress has expressed any intent to abrogate the States' immunity. *See Quern v. Jordan*, 440 U.S. 332, 345 (1979) (42 U.S.C. § 1983 does not abrogate immunity of states). Therefore, Eleventh Amendment immunity has been neither waived nor abrogated.

All of the State Defendants are protected by Eleventh Amendment immunity. The Maryland Court of Appeals is the highest court in Maryland, *see* Md. Const. art. IV, § 14; Md. Code Ann., Cts. & Jud. Proc. § 1-301; it exercises the sovereign authority of the State in performing its judicial function, as does its Chief Judge. *Id.* As the district court correctly held (J.A. 94), the Court of Appeals is an "arm of the State" entitled to Eleventh Amendment immunity, *Puerto Rico Aqueduct & Sewer Auth'y v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993). (J.A. 94.) So, too, are the defendant State officials. (J.A. 95.) *See, e.g., In re Creative Goldsmiths of Washington, D.C., Inc., Debtor*, 119 F.3d 1140 (4th Cir.

---

Gov't § 12-103(2); *see also Pennhurst*, 465 U.S. at 99 n.9 ("[T]he Court consistently has held that a State's waiver of sovereign immunity in its own courts is not a waiver of the Eleventh Amendment immunity in the federal courts."); *Weller v. Department of Soc. Servs.*, 901 F.2d 387, 397 (4th Cir. 1990) (MTCA "clearly limits the state's waiver of immunity to actions brought in the Maryland state courts").

1997) (treating Maryland State Comptroller as equivalent to the State of Maryland and dismissing the action on Eleventh Amendment grounds).

The district court correctly held that the plaintiffs' suit does not fall within the exception to the Eleventh Amendment recognized in *Ex parte Young*, 209 U.S. 123 (1908).  (J.A. 97.)   As the district court explained (J.A. 97), that  "narrow exception," *Seminole Tribe*, 517 U.S. at 76, permits suit only against an official who has a "special relation" to the challenged statute or government action, *i.e.*, a specific "connection with the enforcement" of the challenged law.  *See Ex parte Young*, 209 U.S. at 157 (citation omitted).  In this case, that connection would have to be the enforcement by a named state official of the new tort liability created by *Tracey*—something that is not alleged by the plaintiffs.

As the district court correctly observed, the Governor, the Attorney General, and the Chief Judge do not implement or enforce the *Tracey* decision; nor did the plaintiffs even allege that they do.  (J.A. 97.)  Instead, the plaintiffs alleged only that the Governor "has a duty to take care that the laws are faithfully executed pursuant to federal and State of Maryland law, including their Constitutions" (J.A. 15 ¶ 24); the Attorney General "is charged by law with enforcement of the State of Maryland's laws and the defense of the constitutionality of the laws of the State of Maryland" (J.A. 15 ¶ 25); and the Chief Judge "is the constitutional administrative head of the Maryland judicial system and is charged with upholding

the Constitution of the United States and the Constitution of the State of Maryland, acting on the authority granted to him by the State of Maryland." (J.A. 15 ¶ 27.) These allegations are insufficient as a matter of law because "[g]eneral authority to enforce the laws of the state is not sufficient" to make an official amenable to suit in federal court. *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 331 (4th Cir. 2001) (citations omitted).

Indeed, this Court has required dismissal of a complaint against a state governor, *see id.*, and a state attorney general, *see Harris v. Bailey*, 675 F.2d 614, 617 (4th Cir. 1982), where, as here, neither the Governor nor the Attorney General is the official responsible for enforcing the laws challenged in the lawsuit. *Accord Children's Healthcare Is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1416–17 (6th Cir. 1996) (directing district court to dismiss suit against state attorney general who was not the official responsible for enforcing challenged laws); *Hope Clinic v. Ryan*, 195 F.3d 857, 875 (7th Cir. 1999) ("The states' Attorneys General . . . have nothing to do with civil suits. Relief against the public officials therefore would be pointless even if the civil-liability provisions were problematic."); *Sherman v. Community Consol. Sch. Dist. 21*, 980 F.2d 437, 441 (7th Cir. 1992) (directing district court to dismiss suit against state attorney general who was not the official responsible for enforcing challenged laws); *Long v. Van de Kamp*, 961 F.2d 151, 152 (9th Cir. 1992) (*per curiam*) (same).

The district court correctly determined that the State Defendants are immune from suit and that the *Ex Parte Young* exception to the Eleventh Amendment bar does not apply to the Governor, the Attorney General, and the Chief Judge of the Court of Appeals, because under Maryland law none of these officials is responsible for the implementation and enforcement of the *Tracey* decision. (J.A. 95–96 (citing 209 U.S. 155–56 (1908).)

### B. The Court of Appeals and Its Chief Judge Have Absolute Immunity from Plaintiffs' Claims for Injunctive Relief.

Even if they were otherwise amenable to suit under the Eleventh Amendment, the Chief Judge and the other judges of the Court of Appeals have absolute immunity from all of the plaintiffs' claims for injunctive relief. "[S]tate judges are absolutely immune from liability for their judicial acts." *Briscoe v. Lahue*, 460 U.S. 325, 334 (1983) (citing *Pierson v. Ray*, 386 U.S. 547 (1967); *Stump v. Sparkman*, 435 U.S. 349 (1978)); *see also Brandon E. ex rel. Listenbee v. Reynolds*, 201 F.3d 194 (3d Cir. 2000) (state judges have immunity from suits for injunctive relief under 42 U.S.C. § 1983 for their acts as neutral adjudicators); *Goodson v. Maggi*, 797 F. Supp. 2d 604, 622 (W.D. Pa. 2011) (state judge had judicial immunity from injunctive relief under 42 U.S.C. § 1983 for acts performed in his judicial capacity). As the district court correctly determined, the judges of the Court of Appeals act in a "quintessentially judicial capacity" when, as in

20

*Tracey*, they decide a case before them and do not exceed their judicial authority in developing the common law of Maryland.  (J.A. 98–99 (citing *Ireland v. State*, 310 Md. 328, 331 (1987).)  The district court properly determined that the Chief Judge and the Court of Appeals are absolutely immune from suit for their judicial acts.

## C.  The Plaintiffs Waived Their Claims That the State Defendants Are Not Immune from Suit.

The State Defendants' immunity is dispositive of the claims in this lawsuit for the reasons above and also because the plaintiffs have waived their claims to the contrary.  Federal Rule of Appellate Procedure 28 requires that the appellants' brief contain the "appellant's contentions and the reasons for them, with citations to the authorities . . . on which the appellant relies."  Fed. R. App. P. 28(a)(8)(A).  "Failure to comply with the specific dictates of this rule with respect to a particular claim triggers abandonment of that claim on appeal."  *Edwards v. City of Goldsboro*, 178 F.3d 231, 241 n.6 (4th Cir. 1999).  If an appellant makes only a passing reference to an argument, or fails to cite any legal authority in support of a point, the appellant's argument is forfeited.  *See*, *e.g.*, *Doe v. Johnson*, 52 F.3d 1448, 1457 (7th Cir. 1995) (stating that "a litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority, forfeits the point"); *Nunez-Pena v. Immigration & Naturalization Serv.*, 956 F.2d 223, 225 n.4 (10th Cir. 1992) ("A litigant who

mentions a point in passing and fails to press it by supporting it with pertinent authority, or by showing why it is sound despite the lack of supporting authority, forfeits the point.").  As the District of Columbia Circuit has explained, "[i]t is not enough merely to mention a possible argument in the most skeletal way, leaving a court to do counsel's work, create the ossature for the argument, and put flesh on its bones."  *Consolidated Edison Co. v. Federal Energy Regulatory Comm'n*, 510 F.3d 333, 340 (D.C. Cir. 2007).

The plaintiffs' principal brief contains no argument that the district court erred in determining that the Chief Judge of the Court of Appeals is immune from suit for judicial acts.  Brief at 69–70.  Accordingly, the plaintiffs have waived any appellate challenge to the district court's dismissal of the Chief Judge.  And the plaintiffs' appellate challenge to the district court's determination that the other State Defendants do not fall within the *Ex Parte Young* exception is completely devoid of any reasoning or citation to authority.  Brief at 69–70.  The plaintiffs have forfeited these appellate claims, and the judgment below should be affirmed on that basis as well.

## III.   THE DISMISSAL OF ARMISTEAD SHOULD BE AFFIRMED BECAUSE ARMISTEAD IS NOT A STATE ACTOR AND THE PLAINTIFFS WAIVED ANY CLAIM THAT IT IS.

In three counts of the nine-count amended complaint, the plaintiffs asserted constitutional claims against Armistead; each of these claims hinged on the

plaintiffs' allegation that Armistead had committed an unconstitutional "taking" of their property. Count 5 alleged a "taking in violation of the Fifth Amendment to the federal constitution"; Count 6 asserted a similar claim under 42 U.S.C. § 1983; and Count 9 attempted to do the same under the Maryland Constitution. (J.A. 30–32, 36–38.) As the district court correctly determined, however, Armistead is a private entity and, as such, it is incapable of violating any of the constitutional provisions at issue. (J.A. 111.) *See United States v. Morrison*, 529 U.S. 598, 621 (2000) (observing that "the Fourteenth Amendment, by its very terms, prohibits only state action").

Moreover, the plaintiffs' brief fails to provide any argument or reason why Armistead should be considered a state actor. Therefore, the plaintiffs have failed to comply with Federal Rule of Appellate Procedure 28, and they have waived any argument that Armistead has violated the federal and state constitutions.

### A.    Armistead Is Not a State Actor.

A private entity like Armistead cannot violate the Fifth Amendment or § 1983 unless it is functionally a "state actor." *See Holly v. Scott*, 434 F.3d 287, 291–92 (4th Cir. 2006) (stating that courts "insist as a prerequisite to liability that the conduct allegedly causing the deprivation of a federal right be fairly attributable to the State," and that by "doing so, we maintain the Bill of Rights as a shield that protects private citizens from the excesses of government, rather than a

sword that they may use to impose liability upon one another").[5]  A private party may be found liable as a state actor "if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'"  *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (citations omitted).  In this case, the plaintiffs complain only that Armistead created a private rule—banning pit bulls from Armistead's own private property—in an attempt to minimize its exposure to tort liability.

The plaintiffs have cited no authority whatsoever that this conduct can be attributed to the State of Maryland.  To the contrary, in similar cases, the courts have held that such private rules do not rise to the level of state action.  *See*, *e.g.*, *Loren v. Sasser*, 309 F.3d 1296, 1303 (11th Cir. 2002) (homeowners' association was not a state actor when it refused to permit plaintiffs to post "For Sale" sign in front of their house); *Young v. Halle Hous. Assocs.*, 152 F. Supp. 2d 355, 366 (S.D.N.Y. 2001) (private apartment complex was not a state actor when it prohibited tenants from having overnight guests); *Goldberg v. 400 E. Ohio Condo. Assoc.,* 12 F. Supp. 2d 820, 823 (N.D. Ill. 1998) (condominium association was not a state actor when it prohibited most forms of handbilling); *Langley v. Monumental Corp.*, 496 F. Supp. 1144, 1151 (D. Md. 1980) (landlord's rule banning children,

---

[5] Indeed, the plaintiffs concede this point in their brief by recognizing that the Takings Clause "is concerned simply with the governmental actor."  Brief at 66.

which was permitted by county ordinance, was not state action); *see also Alberto San, Inc. v. Consejo de Titulares del Condo. San Alberto*, 522 F.3d 1, 4–5 (1st Cir. 2008) (condominium association was not a state actor where a statute permitted its voting rights arrangement).

Further, the allegations in the amended complaint are so general and conclusory in nature that they are legally insufficient to equate Armistead with the State of Maryland. The plaintiffs assert only that the "language" of the decision in *Tracey* "empowers and requires condominium and cooperative associations to extinguish and transfer their homes and interests in their associations from residents believed to have dogs that might be considered 'pit bulls.'" (J.A. 16–17.) The plaintiffs further assert that, in "taking the real property of the Plaintiffs . . . and giving it to Armistead Homes, the Defendants intend to benefit Armistead Homes." (J.A. 30). These legal conclusions are insufficient to state a claim against Armistead, and fail to state "a plausible entitlement to relief," as required by *Iqbal* and *Twombly*.

First, the claim that the *Tracey* decision "empowered" or "required" Armistead to take the plaintiffs' property is without foundation. The *Tracey* decision established a new standard for tort liability—it did not empower or require anyone to do anything. Armistead's authority to adopt rules for the protection of the housing development is found in the corporation's bylaws and the

plaintiffs' agreements to abide by those rules, all of which predate the *Tracey* decision. For instance, Armistead could have adopted a "no dog" policy, wholly apart from the *Tracey* ruling, and would have been within its rights as a private landlord in doing so.

Second, the allegation that the State has given the plaintiffs' property to Armistead is meritless. It is obvious from the *Tracey* decision itself that the Court of Appeals did no such thing. Even if Armistead had evicted the plaintiffs, that would not have been a result compelled by the *Tracey* decision, nor is there any reasonable argument that the action of Armistead in doing so would have been as a State actor. Moreover, as the plaintiffs admit, they still live at their residences within Armistead, and they still possess their animals. *See* Brief at 18. The State has not given Armistead anything, and the plaintiffs' conclusory assertions to the contrary are baseless.

Finally, the suggestion that the Maryland Court of Appeals, in arriving at its decision in *Tracey*, "intend[ed] to benefit Armistead" is unsupportable. There are no facts in the amended complaint to support this legal conclusion, nor could there be. Armistead was not a party to the *Tracey* case, did not participate as *amicus curiae*, and was not mentioned in the *Tracey* decision. And the decision in *Tracey* had nothing to do with either property rights or the power of a housing cooperative to evict a member for refusing to comply with the cooperative's rules. Indeed, the

possibility that a landlord would evict a tenant because of dog ownership, or that a tenant would choose eviction over compliance with a cooperative's rules, was never mentioned in *Tracey*.

Because the plaintiffs made no factual allegation that Armistead, a private corporation owned in part by the plaintiffs themselves, is equivalent to the State of Maryland, their claims against Armistead were properly dismissed. *See*, *e.g.*, *Wiggins v. 11 Kew Garden Ct.*, 497 Fed. App'x 262, 264 (4th Cir. 2012) (affirming dismissal of § 1983 claim where plaintiff failed to allege any facts in support of his claim that private actors conspired with the government); *Morales v. Richardson*, 841 F. Supp. 2d 908, 913–14 (D. Md. 2012) (dismissing § 1983 action against an off-duty police officer where there was a "mere formulaic recitation of the elements of a cause of action" and no facts to support a finding of state action), *aff'd*, 475 Fed. App'x 894 (4th Cir. 2012); *McFayden v. Duke Univ.*, 786 F. Supp. 2d 887, 943 (M.D.N.C. 2011) (stating that "a conclusory allegation that an individual or entity was acting 'under color of law' is not sufficient, and Plaintiffs must instead plead specific facts to survive a motion to dismiss").

### B.    The Plaintiffs Have Waived Any Claim That Armistead Is a State Actor.

In any case, the plaintiffs did not develop in their principal brief any argument that Armistead is a state actor, and they do not cite any authority at all in

support of such a claim.  Indeed, the plaintiffs' brief does not even positively assert that Armistead *is* a state actor.  Rather, the only authority cited by the plaintiffs on this issue is a quote from the district court's opinion recognizing that Armistead is *not* a state actor (Brief at 64), and a footnote citation to one of the authorities the district court cited in support of its own holding (*Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 536–37 (1992) (Blackmun, J., concurring in part, concurring in the judgment in part, and dissenting in part)).

As explained above, Rule 28(a)(9)(A) requires an appellant to argue each appellate claim with supporting reasons and citations to authorities, and the appellant's failure to comply with the rule constitutes abandonment of the appellate claim.  *Edwards*, 178 F.3d at (citing Fed. R. App. P. 28(a)(9)(A)). The plaintiffs have thus forfeited any claim that Armistead is a state actor, and the lower court's dismissal of Armistead from the case should be affirmed.

## IV. THE COMPLAINT FAILS TO ALLEGE ANY CLAIM AGAINST THE DEFENDANT STATE OFFICIALS.

The district court correctly dismissed the Governor, the Attorney General, and the Chief Judge as defendants for the additional reason that the plaintiffs fail to allege any facts that pertain to any of these defendants.  *See Iqbal*, 556 U.S. at 679 (stating that legal conclusions . . . must be supported by factual allegations"). Accordingly, the amended complaint does not state any basis for inferring that these defendants committed any violation of law or failed to take any action that

28

was legally required.  Moreover, the amended complaint does not allege that any of these defendants played any part in either the decision of Armistead to change its policy regarding pets or in the allegedly threatened eviction proceedings.  To the contrary, as a matter of law, neither the Governor nor the Attorney General have any role in the Court of Appeals' common-law decision-making and neither of them "enforce" its decisions establishing rules for establishing tort liability in private civil litigation or play any role in eviction proceedings for violations of private leasehold agreements.  *See Ireland*, 310 Md. at 331 (stating that "the determination of what part of that common law is consistent with the spirit of Maryland's Constitution and her political institutions, are to be made by [the] Court [of Appeals].")  Likewise, the Chief Judge, although a member of the Court of Appeals, has no individual authority to establish common law policy and does not institute eviction proceedings.  Therefore, the district court correctly dismissed all claims against the Governor, the Attorney General, and the Chief Judge for failure to state a claim upon which relief may be granted.

V.  **THE PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED BECAUSE THE ALLEGATIONS FAIL TO SUPPORT PLAINTIFFS' CONTENTIONS THAT THEIR DUE PROCESS RIGHTS WERE VIOLATED OR THAT THERE HAS BEEN A TAKING OF THEIR PROPERTY.**

A.  **The Allegations Fail to Support Plaintiffs' Contentions That Their Due Process Rights Were Violated.**

1.  **A Dog Owner's Property Interest Is Subject to the Police Power and May Be Regulated in Order to Provide for the Public Welfare and Safety.**

The district court correctly rejected the plaintiffs' assertion that they have a fundamental right to own and keep dogs. (J.A. 104–05.) Contrary to the plaintiffs' assertions, there is no such right; instead, the States have the power to regulate dog ownership because of "the nature of dogs, specifically their liability to break through all discipline and act according to their original savage nature." *Bess v. Bracken County Fiscal Court*, 210 S.W.3d 177 (Ky. App. 2006) (quoting *Shadoan v. Barnett*, 289 S.W. 204, 205 (Ky. 1926) (citation omitted). Accordingly, dogs "have, from time immemorial, been considered as holding their lives at the will of the legislature, and properly falling within the police powers of the several States." *Sentell v. New Orleans & C.R. Co.,* 166 U.S. 698, 702 (1897). "[R]egardless of statute, a ferocious dog is looked upon as *hostis humani generis*, and as having no right to his life which man is bound to respect." *Id.* at 702; s*ee also Niccia v. New York*, 254 U.S. 228 (1920) (upholding state statute requiring dog owners to pay license fees). As the Supreme Court has explained, because dogs are "subject to

30

the police power of the State, [they] might be destroyed or otherwise dealt with, as in the judgment of the legislature is necessary for the protection of its citizens." *Sentell*, 166 U.S. at 704.

Because "[p]roperty in dogs is of an imperfect or qualified nature . . . they may be subjected to peculiar and drastic police regulations by the State without depriving their owners of any federal right." *Niccia*, 254 U.S. at 230 (citing *Sentell*, 166 U.S. 698). A dog owner's property interest "must be balanced against the local government's power to provide for public safety." *Vanater v. Village of South Point*, 717 F. Supp. 1236, 1242–1243 (S.D. Ohio 1989). A State, in the exercise of its police power, "may interfere with private property, and even order its destruction." *Sentell*, 166 U.S. at 702.

### 2. Laws Regulating Pit Bull Ownership Do Not Violate Due Process.

The district court correctly determined that plaintiffs cannot establish their claim that the decision of the Court of Appeals is arbitrary, oppressive, and unreasonable or that its definition of pit bull is unconstitutionally vague under either the state or federal due process clauses. A state's exercise of the police power must be upheld if it is "rationally related to a legitimate state interest." *Guardian Plans, Inc. v. Teague*, 870 F.2d 123, 126 (4th Cir. 1989) (citing *City of New Orleans v. Dukes*, 427 U.S. 297, 303–04 (1976)). In order to establish a due

process violation because a state has exercised its police power arbitrarily, a plaintiff must show that the state law is "'wholly arbitrary,' without any basis in reason." *Id.*; *see also Tyler v. City of College Park*, 415 Md. 475, 500 (2010) (stating that in order to establish a due process violation as the result of regulatory legislation, a plaintiff must demonstrate that the Legislature has exercised its police power "arbitrarily, oppressively or unreasonably") (citing *Westchester West No. 2 Ltd. P'ship v. Montgomery County*, 276 Md. 448, 454–455 (1975)). "[A] statute can be impermissibly vague . . . if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits." *Hill v. Colorado*, 530 U.S. 703, 732 (2000); *see also Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982); *Galloway v. State*, 365 Md. 599, 615 (2001) (stating that a law "is not vague" if "the meaning 'of the words in controversy can be fairly ascertained by reference to judicial determinations, the common law, dictionaries, treatises or even the words themselves, if they possess a common and generally accepted meaning'").

Because of the documented viciousness of pit bulls, courts have upheld state and local legislation regulating pit bull ownership—or banning pit bull ownership entirely—against claims that such legislation (1) violates constitutional prohibitions on taking private property without due process of law; (2) is arbitrary or unreasonable; or (3) is impermissibly vague. *See*, *e.g.*, *Vanater*, 717 F. Supp. at

1242–43 (rejecting substantive due process vagueness challenge to ordinance banning "Pit Bull Terriers," defined as a "Staffordshire or American Bull Terrier, or any mixed breed which is partly of those breeds, if it may be identified as such by an Ohio licensed veterinarian"); *American Dog Owners Ass'n, Inc. v. Dade County, Fla.*, 728 F. Supp. 1533 (S.D. Fla. 1989) (rejecting claim that ordinance regulating pit bulls was void for vagueness, where it defined a pit bull by referring to standards set forth by the American Kennel Club and the United Kennel Club); *Holt v. City of Maumelle*, 817 S.W.2d 208 (Ark. 1991) (rejecting vagueness challenge to animal control ordinance prohibiting the "keeping of a dog substantially conforming to the standards of [the American Kennel Club or the United Kennel Club] as to certain breeds, including American Pit Bull Terriers"); *Colorado Dog Fanciers, Inc. v. Denver*, 820 P.2d 644, 650 (Colo. 1991) (rejecting substantive due process challenge to ordinance prohibiting "pit bull," defined as "an American Pit Bull Terrier, American Staffordshire Terrier, Staffordshire Bull Terrier, or any dog displaying a majority of physical traits of any one or more of the above breeds, or any dog exhibiting those distinguishing characteristics which substantially conform to the standards established by the American Kennel Club or United Kennel Club for any of the above breeds"); *State v. Peters*, 534 So. 2d 760, 762 (Fla. App. 1988) (rejecting vagueness challenge to ordinance regulating ownership of pit bulls, defined by reference to standards established by the

American Kennel Club and the United Kennel Club); *Hearn v. City of Overland Park*, 772 P.2d 758, 760 (Kan. 1989) (rejecting substantive due process challenge to ordinance regulating "pit bulls," defined as "the Staffordshire Bull Terrier breed of dogs; the American Staffordshire Terrier breed of dogs; the American Pit Bull Terrier breed of dogs; and dogs which have the appearance and characteristics of being predominantly of the breeds of dogs known as Staffordshire Bull Terrier, American Pit Bull Terrier, [or] American Staffordshire Terrier"); *Garcia v. Village of Tijeras*, 767 P.2d 355, 358 (N.M. Ct. App. 1988) (rejecting challenge to local ordinance making it unlawful to possess "any dog of the breed known as American Pit Bull Terrier" and holding that the ordinance was not void for vagueness and did not violate owners' rights to substantive due process); *City of Toledo v. Tellings*, 871 N.E.2d 1152, 1157 (Ohio 2007) (rejecting substantive due process vagueness challenge to ordinance banning "pit bulls"); *American Dog Owners Ass'n v. Yakima*, 777 P.2d 1046, 1048 (Wash. 1989) (upholding against vagueness challenge an ordinance banning "dogs known by the owners to be pit bulls, specifically the breeds Bull Terrier, American Pit Bull Terrier, Staffordshire Bull Terrier, and American Staffordshire Terrier, as well as dogs 'identifiable' as having any pit bull variety as an element of their breeding").

Contrary to the plaintiffs' assertion that the *Tracey* decision is impermissibly vague because it lacks a definition of "pit bull," Brief at 52–53, it is not necessary

for the law to define "pit bull." As demonstrated by the decisions cited above and the laws they upheld, there is a common understanding of the breeds encompassed within the term pit bull—the Staffordshire Bull Terrier, American Pit Bull Terrier, and American Staffordshire Terrier. Accordingly, a law regulating "pit bulls" gives fair warning to a dog owner even though the law contains no definition of "pit bull." *City of Toledo v. Tellings*, 871 N.E.2d 1152, 1158 (Ohio 2007); *State v. Anderson*, 566 N.E.2d 1224, 1228–29 (Ohio 1991). In rejecting the contention that an ordinance that lacked a definition of pit bull was unconstitutionally vague, the Supreme Court of Ohio explained in *Tellings*, "[T]he physical and behavioral traits of pit bulls together with the commonly available knowledge of dog breeds typically acquired by potential dog owners or otherwise possessed by veterinarians or breeders are sufficient to inform a dog owner as to whether he owns a dog commonly known as a pit bull dog." *Tellings*, 871 N.E.2d at 1158 (quoting *Anderson*, 566 N.E.2d at 1228). As that court observed, "If an individual does not know what type of dog he or she owns, any reasonable owner should be able to obtain this information with a small amount of effort." *Anderson*, 566 N.E.2d at 1228. "'If, after consulting the ordinance, an owner remains in a quandary as to whether the ordinance applied to him, the owner could seek guidance from a

dictionary, a guidebook to dogs or from his or her veterinarian." *Id.* (quoting *American Dog Owners Ass'n*, 728 F. Supp. at 1541).[6]

In any event, the Court of Appeals has imposed strict liability only as to owners or landlords who *knowingly* permit the presence of a pit bull on their premises. *Tracey*, 427 Md. at 652-63. The plaintiffs have failed to present a plausible claim that the *Tracey* decision imposes a common law rule that is unconstitutionally vague or that otherwise offends due process.

### B.  The District Court Correctly Determined That There Has Been No Taking of Private Property for Public Use Without Just Compensation.

The plaintiffs cannot establish a taking of property without just compensation under either federal or state constitutions, as the district court correctly determined. First, as the district court observed, the amended complaint does not allege that there has been "actual, government interference with the Plaintiffs' property," and it therefore fails to allege any taking of the plaintiffs' real or personal property. (J.A. 113.) Second, courts have repeatedly rejected the claims of pit bull owners that state or local regulation of pit bulls amounts to a taking of private property without just compensation, *see Bess*, 210 S.W.3d at 180;

---

[6] The named plaintiffs here, though, face no such quandary—each states under oath that his or her animal is a pit bull. (J.A. 59 ¶ 7 (Profili), 61 ¶ 7 (Weigel), 63 ¶ 7 (Gangi).) Thus the vagueness argument could not, in any event, apply to them.

*Garcia*, 767 P.2d at 362–63, correctly distinguishing between the seizure or regulation of property under the police power and the taking of property for public use.

"The Takings Clause . . . preserves governmental power to regulate, subject only to the dictates of 'justice and fairness.'" *Andrus v. Allard*, 444 U.S. 51, 65 (1979) (holding that regulation barring sale or trade of endangered bird artifacts was not a taking) (quoting *Pennsylvania Cent. Transp. Co. v. New York City*, 438 U.S. 104, 124 (1978)). "Regulatory takings doctrine seeks to 'identify regulatory actions that are functionally equivalent to the classic taking in which government directly appropriates private property or ousts the owner from his domain.'" *Henry v. Jefferson County Comm'n*, 637 F.3d 269 (4th Cir. 2011) (quoting *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 539 (2005)).

The plaintiffs rely on *Stop the Beach Renourishment, Inc. v. Florida Department of Environmental Protection*, but that decision, and likewise the plaintiffs' entire "judicial taking" theory, have no relevance to the case before this Court. 560 U.S. 702, 130 S. Ct. 2592 (2012). In *Stop the Beach*, the State of Florida, in conjunction with local authorities, embarked on a project to restore land that had been submerged by hurricanes, and planned to add 75 feet of dry sand seaward of the mean high-water line. Under Florida law, this would make the State the owner of the newly-dry land. Beach-front property owners challenged

the project as an unconstitutional taking of their rights to accretions, but the Florida Supreme Court held that those rights were merely future contingent interests, and that the landowners had no right to maintain contact between their land and the water. *Stop the Beach*, 130 S. Ct. at 2600. When the case reached the United States Supreme Court, four Justices ascribed to the view that "States effect a taking if they *recharacterize as public property what was previously private property*." *Id.* at 2601 (emphasis added).[7] It is solely on that language that the plaintiffs "takings" claims are based.

The *Tracey* decision did not recharacterize the plaintiffs' residences or their dogs as "public property." The *Tracey* decision reflects only a change in Maryland's common law of torts. No property has been transferred from the plaintiffs to the State of Maryland, Armistead, or anyone else, as a result of the *Tracey* decision. Moreover, in sharp contrast to the state court decision at issue in *Stop the Beach*, the *Tracey* decision has nothing to do with property rights.

---

[7] Only eight Justices participated in the decision in *Stop the Beach*, and four of them ruled that the case did not require addressing this issue. *Id.* at 2613 (Kennedy, J., concurring in part), 2618-19 (Breyer, J., concurring in part). Therefore, the point of law urged by the plaintiffs here—that a judicial decision of a state court can result in an unconstitutional taking—is far from established, given that there was no majority on the Court in support of that position. *See Sifuentes v. American Cyanamid Co.*, 787 F. Supp. 2d 843, 849 (E.D. Wisc. 2011) (rejecting an attempt to state a "judicial taking" claim, and recognizing that the decision in *Stop the Beach* did not "establish a binding precedent" regarding the existence *vel non* of such a claim). Even if a judicial decision could result in an unconstitutional taking, the *Tracey* decision did not.

The common thread throughout the Takings Clause jurisprudence is the focus on actions taken by a government. This is because the entire point of the Takings Clause is to "prevent *the government* from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Palazzolo v. Rhode Island*, 533 U.S. 606, 618 (2001) (emphasis added). Governmental takings occur directly through the exercise of eminent domain or indirectly through the enactment of regulations that deprive citizens of all economic use of their property. *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 537–38 (2005); *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Corp.*, 65 F.3d 1113, 1123 (4th Cir. 1995) ("Takings jurisprudence has recognized that a taking may occur through physical invasion or regulation.").

Here, the State of Maryland has not taken (or threatened to take) the plaintiffs' property, and the State has not imposed any regulation that could amount to a taking. Likewise, Armistead has not taken anything from the plaintiffs, and even if it had, it is legally incapable of committing an unconstitutional taking because it is a private entity. *See Golder v. United States*, 15 Cl. Ct. 513, 518 (1988) ("A taking within the meaning of the Fifth Amendment occurs when the rightful property, contract or regulatory powers *of the government* are employed to control rights or property which have not been purchased.") (emphasis added); *Hamlin v. Writers Guild of Am.*, 2011 WL 7069428, at *3–*4,

2011 U.S. Dist. LEXIS 151968, at *10–*11 (W.D. Pa. 2011) (dismissing as frivolous a plaintiff's allegation that her property was misappropriated by private defendants in violation of the Takings Clause), *adopted by and compl. dismissed at* 2012 WL 171358, 2012 U.S. Dist. LEXIS 6919 (W.D. Pa. 2012).

The plaintiffs failed to state a claim because their amended complaint did not allege facts that, if proven, would establish that the State or any State official has taken any of their real or personal property, and the plaintiffs did not allege any facts that could establish that the State or any State official has "recharacterize[d] as public property what was previously private property." *See Stop the Beach*, 130 S. Ct. at 2601 (plurality, explaining the standard for establishment of a judicial taking). Instead, like the plaintiff in *Holliday Amusement Company of Charleston, Inc. v. South Carolina*, where the Court rejected, as based on a "false premise," the plaintiffs' claim that "the state's legitimate regulation of gambling constitutes a taking," 493 F.3d 404, 410 (4th Cir. 2007), the plaintiffs' claims here are based on a false premise—that regulation of dogs constitutes a taking. *See Bess*, 210 S.W.3d at 181 (The police power "authorizes regulation and destruction of property without compensation if it promotes the general welfare of the citizens.") (quoting *Commonwealth v. R.J. Corman R.R./Memphis Line,* 116 S.W.3d 488, 493 (Ky. 2003)); *see also MacLeod v. Takoma Park*, 257 Md. 477, 481 (1970)

(rejecting inverse condemnation claim where property has been destroyed or diminished in value through exercise of the State's police power).

Contrary to the plaintiffs' unsupportable assertions, under established law the State's "'adjustment of rights for the public good'" does not amount to a compensable taking every time the adjustment "'curtails some potential for the use'" of the property. *Id.* (quoting *Andrus*, 444 U.S. at 65). While the plaintiffs have a property interest in their dogs, "that property in dogs is of an imperfect or qualified nature" due to the fact that "some [breeds of dogs] are afflicted with such serious infirmities of temper as to be little better than a public nuisance." *Sentell*, 166 U.S. at 701. An owner of personal property is charged with awareness "'of the possibility that new regulation might even render his property economically worthless.'" *Holliday Amusement*, 493 F.3d at 410 (quoting *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1027 (1992)). This is particularly true when the personal property is a dog, possession of which a state can regulate or ban altogether. *See Niccia*, 254 U.S. at 230–31. Such regulation under the police power does not amount to a taking. *Bess*, 210 S.W.3d at 180; *Garcia*, 767 P.2d at 362–63.

Ignoring the many published decisions upholding the regulation or prohibition of pit bull ownership, the plaintiffs rely on two decisions (one unpublished) to support their arguments that pit bulls are not inherently dangerous.

41

Brief at 57–61 (citing *Dias v. City & County of Denver*, 567 F.3d 1169 (10th Cir. 2009); *American Canine Found. v. City of Aurora*, No. 06-CV-1510, 2008 U.S. Dist. LEXIS 42545 (D. Colo. May 28, 2008). The plaintiffs' reliance is unavailing, however, because if reasonable minds could differ, the determination of the Court of Appeals of Maryland as to the public welfare embodied in the common law of Maryland must stand. *See Bess*, 210 S.W.3d at 182. As have many other courts and legislative bodies, the Court of Appeals of Maryland concluded, on the record before it, that pit bulls are inherently dangerous because they are "extremely aggressive," "bite to kill without signal," and have a "greater propensity to bite humans than other breeds." *Tracey*, 427 Md. at 642–42. It also concluded, as it has the constitutional authority to do, that the public welfare of the citizens of Maryland would be best served by changing the common law of Maryland to impose strict liability on owners and landlords for the injuries caused by these inherently dangerous animals.[8]

---

[8] These specific findings distinguish the decision in *City of Aurora*, where the district court based the denial of summary judgment on the lack in that record of evidence showing "why the Aurora City Council believed that the ordinance was necessary to protect the safety of its residents." *City of Aurora*, 2008 U.S. Dist. LEXIS 42545 at *24. And the decision in *Dias* is inapposite because that case dealt with an ordinance imposing a total ban on pit bull ownership within the City of Denver, under which, at the time the district court dismissed the action, Denver had impounded and killed more than 1,100 dogs. 567 F.3d at 1174.

The plaintiffs' count under the Maryland constitution suffers from an additional flaw. The text of the Maryland constitution itself demonstrates the legal impossibility of the plaintiffs' claim: "*The General Assembly shall enact no Law* authorizing private property, to be taken for public use, without just compensation, as agreed upon between the parties, or awarded by a Jury, being first paid or tendered to the party entitled to such compensation." Md. Const. art. III, § 40 (emphasis added). Thus, Maryland's takings provision is even more explicitly tied only to actions of the Maryland General Assembly, not a decision of the Court of Appeals or the action of a private party such as Armistead.[9] *See Ashton v. Brown*, 339 Md. 70, 105 (1995) (stating that "constitutional provisions like . . . Article III, § 40 are specifically designed to protect citizens against certain types of unlawful acts *by government officials*") (citation omitted, emphasis added). Moreover, without a taking—and there has been none—Article III, § 40 is not implicated. *Ridings v. State Roads Comm'n*, 249 Md. 395, 399 (1968) ("The basic

---

[9] The plaintiffs' claim that the *Tracey* decision violates the Maryland Constitution is further deficient because the Court of Appeals is the final arbiter of the meaning of the Maryland Constitution. *See Maryland Comm. for Fair Representation v. Tawes*, 228 Md. 412, 425-26 (1962) (holding that the Maryland Court of Appeals "is the ultimate authority to determine whether constitutional limitations have been transcended"), *rev'd on other grounds*, 377 U.S. 656 (1964). Because the Court of Appeals' decision in *Tracey* cannot "violate" the Maryland Constitution, it necessarily follows that claims against other parties premised on that decision constituting a violation of the Maryland Constitution must fail.

43

constitutional principle is that there must be an actual taking of property or property rights before compensation is required.")

This Court should affirm the dismissal of each of the counts based on the plaintiffs' claim that there was an unconstitutional taking.

## CONCLUSION

For the reasons stated, the judgment of the United States District Court for the District of Maryland should be affirmed.

Respectfully submitted,

DOUGLAS F. GANSLER
Attorney General of Maryland


/s/ Julia Doyle Bernhardt
_____
JULIA DOYLE BERNHARDT
Assistant Attorney General
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
jbernhardt@oag.state.md.us
(410) 576-7291

Attorneys for the State of Maryland, Martin J. O'Malley, Douglas F. Gansler, Mary Ellen Barbera, and the Court of Appeals of Maryland

/s/ William C. Sammons
_____

William C. Sammons
Gregory M. Garrett
Tydings & Rosenberg LLP
100 East Pratt Street, 26th Floor
Baltimore, Maryland  21202
(410) 752-9767

Attorneys for Armistead Homes
Corporation

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

1.    This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because this brief contains 10,625 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Fourteen point, Times New Roman.

# TEXT OF PERTINENT PROVISIONS
## (Fed. R. App. P. 28(f))

**Fed. R. App. P. 28(a)**

**Rule 28. Briefs**

(a) Appellant's Brief. The appellant's brief must contain, under appropriate headings and in the order indicated:

(1) a corporate disclosure statement if required by Rule 26.1;

(2) a table of contents, with page references;

(3) a table of authorities — cases (alphabetically arranged), statutes, and other authorities — with references to the pages of the brief where they are cited;

(4) a jurisdictional statement, including:

(A) the basis for the district court's or agency's subject-matter jurisdiction, with citations to applicable statutory provisions and stating relevant facts establishing jurisdiction;

(B) the basis for the court of appeals' jurisdiction, with citations to applicable statutory provisions and stating relevant facts establishing jurisdiction;

(C) the filing dates establishing the timeliness of the appeal or petition for review; and

(D) an assertion that the appeal is from a final order or judgment that disposes of all parties' claims, or information establishing the court of appeals' jurisdiction on some other basis;

(5) a statement of the issues presented for review;

(6) a concise statement of the case setting out the facts relevant to the issues submitted for review, describing the relevant procedural history, and identifying the rulings presented for review, with appropriate references to the record (see Rule 28(e));

(7) a summary of the argument, which must contain a succinct, clear, and accurate statement of the arguments made in the body of the brief, and which must not merely repeat the argument headings;

(8) the argument, which must contain:

(A) appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies; and

(B) for each issue, a concise statement of the applicable standard of review (which may appear in the discussion of the issue or under a separate heading placed before the discussion of the issues);

(9) a short conclusion stating the precise relief sought; and

(10) the certificate of compliance, if required by Rule 32(a)(7).

## Constitution of Maryland, Article III

### Section 40. Eminent domain.

The General Assembly shall enact no Law authorizing private property, to be taken for public use, without just compensation, as agreed upon between the parties, or awarded by a Jury, being first paid or tendered to the party entitled to such compensation.

## Constitution of Maryland, Article IV

### Section 14. Composition of Court of Appeals; Chief Judge; jurisdiction; sessions; salaries of judges; quorum; division of court; reargument.

The Court of Appeals shall be composed of seven judges, one from the First Appellate Judicial Circuit consisting of Caroline, Cecil, Dorchester, Kent, Queen Anne's, Somerset, Talbot, Wicomico, and Worcester Counties; one from the Second Appellate Judicial Circuit consisting of Baltimore and Harford Counties; one from the Third Appellate Judicial Circuit, consisting of Allegany, Carroll, Frederick, Garrett, Howard, and Washington Counties; one from the Fourth Appellate Judicial Circuit, consisting of Prince George's County; one from the Fifth Appellate Judicial Circuit, consisting of Anne Arundel, Calvert, Charles, and St. Mary's Counties; one from the Sixth Appellate Judicial Circuit, consisting of Baltimore City; and one from the Seventh Appellate Judicial Circuit, consisting of Montgomery County. The Judges of the Court of Appeals shall be residents of their respective Appellate Judicial Circuits. The term of each Judge of the Court of Appeals shall begin on the date of his qualification. One of the Judges of the Court of Appeals shall be designated by the

Governor as the Chief Judge. The jurisdiction of the Court of Appeals shall be co-extensive with the limits of the State and such as now is or may hereafter be prescribed by law. It shall hold its sessions in the City of Annapolis at such time or times as it shall from time to time by rule prescribe. Its session or sessions shall continue not less than ten months in each year, if the business before it shall so require, and it shall be competent for the judges temporarily to transfer their sittings elsewhere upon sufficient cause. The salary of each Judge of the Court of Appeals shall be that now or hereafter prescribed by the General Assembly and shall not be diminished during his continuance in office. Five of the judges shall constitute a quorum, and five judges shall sit in each case unless the Court shall direct that an additional judge or judges sit for any case. The concurrence of a majority of those sitting shall be sufficient for the decision of any cause, and an equal division of those sitting in a case has the effect of affirming the decision appealed from if there is no application for reargument as hereinafter provided. In any case where there is an equal division or a three to two division of the Court a reargument before the full Court of seven judges shall be granted to the losing party upon application as a matter of right.

## Maryland Declaration of Rights

### Article 24. Due process.

That no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land.

## Annotated Code of Maryland, State Government Article

### § 12-103. Scope of subtitle.

This subtitle does not:

(1) limit any other law that:

(i) waives the sovereign immunity of the State or the units of the State government in tort; or

(ii) authorizes the State or its units to have insurance for tortious conduct;

(2) waive any right or defense of the State or its units, officials, or employees in an action in a court of the United States or any other state, including any defense that is available under the 11th Amendment to the United States Constitution; or

(3) apply to or waive any immunity of a bicounty unit, county, municipal corporation, or other political subdivision or any unit, official, or employee of any of those agencies or subdivisions.

## § 12-104. Waiver of immunity.

(a) In general. – (1) Subject to the exclusions and limitations in this subtitle and notwithstanding any other provision of law, the immunity of the State and of its units is waived as to a tort action, in a court of the State, to the extent provided under paragraph (2) of this subsection.

(2) The liability of the State and its units may not exceed $ 200,000 to a single claimant for injuries arising from a single incident or occurrence.

(b) Exclusions and limitations. – Immunity is not waived under this section as described under § 5-522(a) of the Courts and Judicial Proceedings Article.

(c) Payment of claims exceeding coverage. – (1) The Treasurer may pay from the State Insurance Trust Fund all or part of that portion of a tort claim which exceeds the limitation on liability established under subsection (a)(2) of this section under the following conditions:

(i) the tort claim is one for which the State and its units have waived immunity under subsections (a) and (b) of this section;

(ii) a judgment or settlement has been entered granting the claimant damages to the full amount established under subsection (a)(2) of this section; and

(iii) the Board of Public Works, with the advice and counsel of the Attorney General, has approved the payment.

(2) Any payment of part of a settlement or judgment under this subsection does not abrogate the sovereign immunity of the State or any units beyond the waiver provided in subsections (a) and (b) of this section.

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

| | |
|---|---|
| **JOSEPH WEIGEL,** *et al.,* | * |
| *Plaintiffs-Appellants,* | * |
| | *     No. 13-1903 |
| v. | * |
| **STATE OF MARYLAND,** *et al.,* | * |
| *Defendants-Appellees.* | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## CERTIFICATE OF FILING AND SERVICE

I certify that on this 12th day of December, 2013, the Brief of Appellees was filed electronically and served on counsel of record for the appellants, who are registered CM/ECF users.


/s/ Julia Doyle Bernhardt
_____
Julia Doyle Bernhardt